FILED
2009 Sep-03 PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**EUGENE D. BENNETT,** }
}
**Plaintiff,** }
}
**v.** } **Case No.: 2:08-CV-1071-RDP**
}
**JOHN E. POTTER, Postmaster** }
**General c/o Southeast Area Operations,** }
}
**Defendant.** }

**MEMORANDUM OPINION**

This case is before the court on Defendant's Motion for Summary Judgment (Doc. #12), filed May 20, 2009. Plaintiff filed his response brief (Doc. #15) on June 10, 2009. Defendant filed his reply (Doc. #17) on June 17, 2009, bringing the motion under submission.

Plaintiff commenced this action by filing an Application Under Section 706(f) of the Civil Rights Act of 1964 (Doc. #2) with the court on June 2, 2008. The court treated that application as a complaint under one or more of the federal civil rights acts, and deemed it filed on the date of application, but ordered Plaintiff to amend his complaint by July 17, 2009 to comply with the Federal Rules of Civil Procedure. (Doc. #1).

On July 17, Plaintiff, through counsel, filed an amended complaint. (Doc. #3). Plaintiff filed his Second Amended Complaint (Doc. #7) (hereinafter the "Complaint")[1] on August 28, 2009 alleging unlawful discrimination based upon his gender in violation of Title VII of the Civil Rights

---

[1] The court will refer to Document # 7 as "the Complaint." In fact, this document is the Second Amended Complaint, but it supersedes all prior pleadings. For the purposes of defining the nature and scope of Plaintiff's claims, it is the only relevant pleading.

Act of 1964. 42 U.S.C. § 2000e *et seq*. Specifically, Plaintiff alleges that Defendant discriminated against him by: (1) not issuing him an administrative timecard to record his overtime and straight time while female employees were issued administrative time cards; (2) allowing female employees to work overtime and not allowing him to work overtime; and (3) not allowing him to work on his non-scheduled day off on November 6 and 7, 2006, while female employees were allowed to do so. For the reasons outlined below, Defendant's motion for summary judgment is due to be granted.

## I. Legal Standards for Evaluating a Summary Judgment Motion

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R .Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984). Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases where there is no

direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must *either* show that the legitimate reasons offered by the defendant are merely a pretext for discrimination *or* that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

## II. Relevant Facts[2]

Plaintiff's complaint asserts Title VII claims arising from and based on certain claims made in an administrative EEO proceeding identified as Agency Case No. 1H-351-0018-07. (A.F. #19). Plaintiff initially sought EEO counseling in Agency Case No. 1H-351-0018-07 on December 15, 2006. (A.F. #20). The Final Agency Decision at issue in this case and entered in Agency Case No. 1H-351-0018-07 is found at Exhibit C to Plaintiff's complaint, and at Doc. #14-2.

At all times relevant to the Complaint, Plaintiff worked for the Postal Service as a Supervisor, Distribution Operations. (A.F. #1).[3] Plaintiff was one of five Distribution Operation

---

[2] If facts are in dispute, they are stated in the manner most favorable to Plaintiff. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

[3] These facts, contained in Defendant's brief in support of his motion for summary judgment, were admitted by Plaintiff in his response and will heretofore be referenced as "Admitted Fact"

supervisors who directly reported to Dawiyd Barrow El ("Barrow El"), Manager, Distribution Operations. (A.F. #2). Of the five Distribution Operation Supervisors reporting to Barrow El during 2006, two are male (Plaintiff and Leon Nash) and three are female (Veronica Jackson, Jaclyn Hill, and Jeanine Street-Johnson). (A.F. #3).

Each of the five supervisors was responsible for a specific pay location at the Postal Service. (A.F. #4). A pay location is a group of employees who have similar job assignments, such as small parcel and bundle sorter, automated flat sorter, mechanized flat sorter, or Fed Ex. (A.F. #5). In addition to the five supervisors working under Barrow El, there were at least two individuals who were on occasion "acting supervisors" who reported to Barrow El. Those individuals were Carolyn Duncan and S. Lynn Green. (A.F. #6).

In 2006, Barrow El assigned Plaintiff "semi-permanently" to the Fed Ex pay location. (Doc. #14-3 at 40-43). Barrow El testified that he placed Plaintiff in this position because of Plaintiff's alleged abuse of the time card system, and that assignment to this position (wherein Plaintiff would only supervise one other full time postal service employee) allowed Barrow El to supervise Plaintiff more closely with respect to his time card activities. (*Id.*).

The Fed Ex pay location under Barrow El's supervision began at 9:00 p.m. (21:00), which was an earlier shift than the rest of the operations under Barrow El's supervision. (A.F. #9). According to Plaintiff's time records, he clocked in at 9:00 p.m. (21:00) on most workdays from February through October 2006, and on all of his work days from October 31, 2006 through December 30, 2006. (Doc. #14-8). However, Plaintiff testified that he did not arrive at this time

("A.F."). (Doc. #13, 15).

during the period surrounding November 4, 2006 and rather came in closer to 11:00 p.m., when supervision for the other (non-Fed Ex) pay locations began. (Doc. #14-1 at 23-24).[4]

Although not a part of the pending case, Plaintiff filed an earlier administrative complaint (Agency case # 1H-351-0020-06) wherein he raised administrative time card and overtime issues similar to the issues presented in the instant case, but those claims arose in the November 2005 – February 2006 time frame. (A.F. #16). He appealed the final agency decision entered in that earlier administrative proceeding to the EEOC, but that agency also found against Plaintiff regarding that earlier complaint. (A.F. #17). Plaintiff did not appeal that EEOC decision to the district court, and the issues he presented in that case regarding the November 2005 – February 3, 2006 period are not part of this case. (A.F. #18).

In his answers to interrogatories propounded in this case, Plaintiff identified Jacklyn Hill, Jeanine Street-Johnson, Veronica Jackson, Carolyn Duncan, and S. Lynn Green as "comparators." (A.F. #22). In 2006, Jacklyn Hill, Jeanine Street-Johnson, and Veronica Jackson were all Supervisors, Distribution Operations, ("SDOs") working under Barrow El. (A.F. #23). In 2006, Carolyn Duncan and S. Lynn Green were "204B" employees who, on occasion, were acting supervisors under Barrow El. (A.F. #24).

Barrow El testified that Plaintiff had a history of improperly changing his own time records to assign himself more overtime than he was entitled and had made at least 299 unauthorized time entries for employees, notwithstanding directions not to do so. (Doc. #14-3 at 33-35; #14-5). The

---

[4] Defendant asserts that these time card entries prove that Plaintiff's primary duty assignment was in the Fed Ex pay location; however, Plaintiff contends that he was moved from the Fed Ex operation frequently. (Doc. #14-8; #14-3 at 40-43; #14-5; *but see* Plaintiff's Disputed Facts, Doc. #15 at 5).

EEOC, in its prior case regarding the November 25, 2005 – February 3, 2006 time period (Agency case # 1H-351-0020-06)[5] found that Defendant had presented a legitimate non-discriminatory reason for his actions based on evidence that Plaintiff "had improperly made changes to his own time records on 38 occasions to assign himself to more overtime than he was entitled . . . [and] he had made over 299 unauthorized entries for employees notwithstanding directions not to do so." (A.F. #26, Doc. #14-4at 1). Barrow El testified that he restricted Plaintiff's access to the administrative time card (which would allow him to alter time entries) because of his belief that Plaintiff continued to misuse his administrative time card in this way. (Doc. #14-3 at 33-35, #14-5). Barrow El did not restrict administrative time card access to Leon Nash, the other male employee he supervised. (A.F. #28). Plaintiff presented no evidence that any of the comparators listed has been accused by Barrow El of similar time entry issues. (A.F. #29). During his deposition, Plaintiff testified that "[Barrow El] took my access because I reported he was stealing time. He was off and getting paid with the automatic clock rings and wasn't getting charged leave. That's why he took my access." (A.F. #30).

Barrow El explained overtime is not an entitlement for supervisors, and that he authorized overtime only when it was needed in a particular operation. (A.F. #31). He testified that in general, there is less occasion for overtime in the Fed Ex operation than the other operations due to the nature of the Fed Ex operation. (Doc. #14-5). He also testified that he did not remember any occasion where Plaintiff requested overtime, including the incident complained of by Plaintiff on November 6-7, 2006. (Doc. #14-3 at 11-12, 18-19, 36-37). Plaintiff testified that he had requested overtime. (Doc. #14-1 at 32-33). Barrow El testified that, to the extent he did not authorize overtime for

---

[5] Again, Plaintiff did not file suit based upon these earlier claims.

Plaintiff or any other supervisor, it was because overtime was not needed from that supervisor. (A.F. #36).

For the period February 4, 2006, through December 31, 2006, Plaintiff clocked 143.25 hours of extra straight time (overtime). (A.F. #38). While alleged comparator Jeanine Street-Johnson clocked 217.12 hours of extra straight time for the February 4, 2006, through December 31, 2006, period, she clocked in at 2100 hours on only one day (November 1, 2006) during that period, and thus did not work in the Fed Ex pay center (except for possibly that one day). (A.F. #39). She did not clock any overtime on that November 1, 2006 date. (*Id.*) While alleged comparator Veronica Jackson clocked 275.53 hours of extra straight time for the February 4, 2006, through December 31, 2006, period, she did not clock in at 2100 hours on any days during that period, and thus did not work in the Fed Ex pay center during that period. (A.F. #40). Alleged comparator Jaclyn Hill only clocked 89.28 hours of extra straight time for the February 4, 2006, through December 31, 2006, period, which was 53.97 hours less overtime than the Plaintiff clocked for that same period. (Doc. #14-7 at ¶ 6; Doc. #14-11). Comparator Carolyn Duncan clocked 143.8 hours of overtime during the period February 4, 2006, through December 31, 2006, while in the role of an acting supervisor, but she did not clock in at 2100 hours during any days in that period and thus was not working in the Fed Ex operation. (Doc. #14-5 at ¶ 8; #14-7 at ¶ 6; Doc. #14-13). Comparator S. Lynn Green only clocked 8.11 hours of overtime while an acting supervisor during the period February 4, 2006, through December 31, 2006, and did not clock any overtime as a supervisor in the Fed Ex operation

during the period October 31, 2006, through December 15, 2006. (Doc. #14-5 at ¶ 9; #14-7 at ¶ 6; #14-12).[6]

## II. Discussion

### A. Legal Background

In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318,1330 (11th Cir. 1998)*; see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence). A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1537 (11th Cir. 1997); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987). Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." *Burns v. Gadsden State Community College*, 908 F.2d 1512, 1517 (11th Cir. 1990) (*citing Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 n. 13 (11th Cir. 1988); *see Wright v. Southland Corp.*, 187 F.3d 1287, 1293-94 (11th Cir. 1999) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition).

---

[6] Plaintiff contends that Ms. Duncan actually clocked 191.5 hours of overtime and Ms. Green actually clocked 177.86 hours. However, this includes overtime earned in both supervisory roles and non-supervisory roles. As "204B" employees, Ms. Duncan and Ms. Green only occasionally worked as an acting supervisors. The facts as recounted by the court reflects only overtime earned as acting supervisors and not overtime earned while working in non-supervisory roles.

Here, Plaintiff has attempted to present circumstantial evidence of gender discrimination. "In evaluating Title VII claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981)." *Combs*, 106 F.3d at 1527 (parallel citations omitted). Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff first has the burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *See id.* at 1527-28. The methods of presenting a *prima facie* case, as well as the exact elements of the case, are not fixed; rather, they are flexible and depend to a large degree upon the facts of the particular situation. *See, e.g., Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *Lincoln v. Board of Regents of Univ. Sys.*, 697 F.2d 928, 937 (11th Cir. 1983). One of the ways a plaintiff may establish a *prima facie* case of disparate treatment gender discrimination is by showing that (1) he belongs to a protected group; (2) he was qualified to do the job; (3) he was subject to an adverse job action; and (4) his employer treated similarly situated employees outside the protected class more favorably.[7] *Webb-Edwards v. Orange Co. Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008) (*quoting Hinson v. Clinch Co. Ga. Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000)).

Once the plaintiff has shown a *prima facie* case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Combs*, 106 F.3d at 1528. The employer "need not

[7] *See also McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the *prima facie* proof required from respondent is not applicable in every respect in different factual situations.").

persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254-55; *see Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc). If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination is dispersed and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. When the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, the plaintiff must rebut each of the defendant's proffered reasons. *Chapman*, 229 F.3d at 1024-25. Although the *prima facie* case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the *prima facie* case. *Combs*, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the *McDonnell Douglas* and *Burdine* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may defeat a summary judgment by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148-49 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50

motion); *see also Hicks,* 509 U.S. at 524; *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000); *Combs*, 106 F.3d at 1529-38 (interpreting *Hicks* and the post-*Hicks* case law); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 920-21 (11th Cir. 1993).

**B. Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination**

In order for Plaintiff to establish a *prima facie* case, he must prove that his employer treated similarly situated employees outside of his protected class more favorably. "In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similarly situated to [her]." *MacPherson v. University of Montevallo*, 922 F.2d 766, 774 n. 16 (11th Cir. 1991). The plaintiff must show that she shared the same type of task as the comparators. *Cooper v. Southern Co.*, 390 F.3d 695, 735 (11th Cir. 2004) (overruled on other grounds) (*citing Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992)). "A comparator is an employee similarly situated to the plaintiff *in all relevant respects*." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1280 (11th Cir. 2008) (internal quotations and alteration omitted, emphasis added). It is not always possible to find a suitable comparator, and the Eleventh Circuit has noted that "if a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Id*. at 1277 (quotation, alterations, and emphasis omitted).

In addition to the *prima facie* standard recited above, in this case there is evidence that Barrow El restricted Plaintiff's access to the administrative time card system and assigned Plaintiff primarily to the Fed Ex pay location due to Barrow El's belief that Plaintiff was abusing the entry

of time and overtime in that system. As such, this case is in the nature of one in which an employee alleges discrimination based on some disciplinary action taken by the employer against the employee. In a case alleging discrimination concerning disciplinary action by an employer against an employee, in order for the complaining employee to present a *prima facie* case, he must identify another employee who committed similar wrongful conduct and was treated differently. *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1082 (11th Cir. 2005). "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Silvera v. Orange County Schoolboard*, 244 F.3d 1253, 1259 (11th Cir. 2001) (*quoting Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 (11th Cir.); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). Plaintiff fails to identify a single comparator who was involved in or accused of the same or similar conduct.[8] As such, he cannot establish a *prima facie* case of discrimination.

Additionally, even if the disciplinary action issue was not present in this case, Plaintiff fails to identify a female employee who was similarly situated to him and was treated differently. Plaintiff's time records, contrary to his conclusory contentions, indicate that he was primarily assigned to the Fed Ex location. None of the female supervisors who had more overtime than Plaintiff worked in the Fed Ex operation other than Ms. Street-Johnson, who worked in Fed Ex on one day during that period, and did not work overtime on that day. (Doc. #14-5 at ¶ 8; #14-9). To the extent Plaintiff testified in his deposition that S. Lynn Green was allowed to work overtime in

---

[8] In fact, Plaintiff admits that he has presented no evidence that any comparator he identified was accused of any similar conduct by Barrow El. (A.F. #29).

the Fed Ex operation and he was not, time records show that for the period February 4, 2006, through December 31, 2006, Ms. Green worked only 8.11 hours overtime while working in a supervisory capacity. (Doc. #14-7 at ¶ 6; #14-12). In contrast, Plaintiff worked 143.25 hours of supervisory overtime for that period. (Doc#14-7at ¶ 6; #14-8). Thus, Plaintiff cannot establish a *prima facie* case under this formulation either.[9] Summary judgment is due to be granted on this ground alone.

**C. Plaintiff Cannot Show Discriminatory Animus**

Even if a plaintiff was able to establish a *prima facie* case of discrimination (and, again, here Plaintiff has not done so), he must also meet his burden under the *McDonnell Douglas* analysis of showing that the defendant's articulated nondiscriminatory reasons were merely pretext for unlawful discrimination. "[T]o avoid summary judgment [the plaintiff] must introduce *significantly probative evidence* showing that the asserted reason is merely pretext for discrimination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) (citation omitted) (emphasis added). A reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." *Hicks*, 509 U.S. at 515. Plaintiff cannot make that showing here.

In this case, Defendant has articulated the legitimate, nondiscriminatory reasons that Plaintiff was moved to the Fed Ex location so that he could be closely monitored because of his alleged abuse of the time card system.[10] Because overtime is given on an as needed basis and because less

---

[9] The court understands that the *McDonnell Douglas/Burdine* model is not to be rigidly or mechanically applied. Nevertheless, Plaintiff is not able to make out a *prima facie* case under any appropriate formulation.

[10] Plaintiff contends that "[t]here is nothing to substantiate that this "belief" was a good faith and honest one." (Doc. #15 at 4). The court disagrees. The EEOC decision definitively found that Plaintiff "had improperly made changes to his own time records on 38 occasions to assign himself

overtime is needed in the Fed Ex location, Plaintiff was assigned less overtime. As mentioned above, Defendant's reason, based upon his belief that Plaintiff abused the time card system, is bolstered not only by the sworn testimony of Barrow El, but also the EEOC decision finding that Plaintiff had improperly altered his time card as well as the time cards of employees who he supervised. At the very least, this evidence satisfies Defendant's burden of articulating a non-discriminatory reason for the employment action really challenged in this case. That is, it shows that Defendant believed that Plaintiff had violated the time card system and, rather than terminating Plaintiff, Defendant chose to take the remedial action of assigning him to a work station where the opportunity to abuse the time card system was greatly reduced.

Plaintiff does not make any serious argument which suggests that Defendant's articulated reason was actually pretext for unlawful discrimination.[11] Rather, he only argues that Barrow El's testimony is not credible. However, the court has already found that Defendant met its burden

---

to more overtime than he was entitled . . . [and] he had made over 299 unauthorized entries for employees notwithstanding directions not to do so." (A.F. #26, Doc. #14-4at 1). Even if this decision is not entitled to issue preclusive deference, it at the very least shows that Barrow El had a contemporaneous belief that before he ever assigned Plaintiff to Fed Ex, Plaintiff had abused the time card system. Thus, based upon this and the undisputed *evidence* in the Rule 56 record, the court finds that Barrow El's disciplinary measure – restricting Plaintiff's access to administrative time cards and moving him to a position where Plaintiff could be more closely monitored with respect to assigning overtime to himself and those he supervised – was based on a good faith belief. And this is the case whether or not Plaintiff admits he abused the time card system (or even whether or not he in fact did so).

[11] "In opposing a motion for summary judgment, a party may not rely on her pleadings to avoid judgment against her. [Moreover, t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *see also Brewer v. Purvis*, 816 F. Supp. 1560, 1579 (M.D. Ga. 1993), *aff'd*, 44 F.3d 1008 (11th Cir. 1995) ("Summary Judgment is appropriate since plaintiff failed to respond to [defendant's] argument on this issue.") (citations omitted).

(which is exceedingly light) in proffering a legitimate non-discriminatory reason for the employment actions complained of. At this point, Plaintiff is required to show that this reason is false *and* that discrimination was the real reason for Defendant's actions. Plaintiff offers no proof that discrimination played any part in any of Defendant's decisions. Further, for many of the same reasons that Plaintiff is unable to prove a *prima facie* case, there is no arguable basis for Plaintiff's claims that gender discrimination motivated any of Defendant's actions. As such, not only can Plaintiff not prove a *prima facie* case of discrimination, even if he had been able to do so, he simply cannot satisfy his burden to show that Defendant's articulated nondiscriminatory reasons were merely pretext for unlawful discrimination. Therefore, there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law on all of Plaintiff's claims.

## IV. Conclusion

Defendant has carried his burden on summary judgment of demonstrating that there are no material facts in dispute and that he is entitled to judgment as a matter of law on Plaintiff's gender discrimination claims. Accordingly, Defendant John E. Potter's motion for summary judgment is due to be granted and Plaintiff's complaint is due to be dismissed with prejudice. The court will enter an order consistent with this memorandum opinion granting Defendant's motion for summary judgment and dismissing Plaintiff's lawsuit with prejudice.

**DONE** and **ORDERED** this 3rd day of September, 2009.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE